IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EVERARDO PEREZ-GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 7216 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| VILLAGE OF MUNDELEIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

As a result of his detention at the Lake County jail for nearly one month under a mistaken identity, Everardo Perez-Garcia sues Lake County Sheriff, Gary Del Re, as well as others, for violating his civil rights under 42 U.S.C. §1983 (Count I) and false imprisonment (Count II).[1] Del Re moves for summary judgment on Count II pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

Del Re's motion and supporting memorandum clearly state that Del Re moves for summary judgment on Count II. Nevertheless, Perez-Garcia mistakenly responded as if Del Re moved for summary judgment on Count I. Del Re identified Perez-Garcia's mistake in his reply memorandum. Perez-Garcia did not request leave of court to supplement his response. The court must review the record to determine whether there are any genuine issues of material fact precluding entry of summary judgment on Count II.

---

[1]Perez-Garcia voluntarily dismissed Count III of his complaint. *See* Dkt. No. 42.

All facts are undisputed unless otherwise noted.[2] On April 26, 1994, the Lake County Circuit Court issued an arrest warrant for Everardo Perez-Trujillo. Del Re facts ¶ 6. On November 9, 2003, Perez-Garcia was pulled over for a traffic stop by Grayslake police officer Mario Balarin. Perez-Garcia facts ¶ 2. Balarin arrested Perez-Garcia based on the outstanding warrant for Trujillo. Del Re facts ¶ 9. Prior to Perez-Garcia's arrest, the Grayslake police department sent a telex message to the Lake County sheriff's department requesting confirmation of an outstanding warrant for "Perez, Everardo Truvillo." Perez-Garcia facts ¶ 2. The sheriff's department responded with a telex message confirming the outstanding warrant and listing a birth date of February 4, 1967. The telex message asked the police department to transport the subject to Lake County jail if he was unable to post bond. *Id.* The warrant was in fact issued for Everardo Perez Trujillo. *Id.*

Balarin arrested Perez-Garcia and transported him to the Lake County jail for detention. Del Re facts ¶ 9, Perez-Garcia App. Ex. H.[3] Del Re was Lake County's sheriff at the time. *Id.* at ¶ 2. Balarin completed a portion of Perez-Garcia's booking card; he identified Perez-Garcia as Averardo [sic] Perez and indicated he was arrested on a warrant. Del Re facts ¶ 9. Lake County sheriff's deputies booked Perez-Garcia under the names Everardo Perez, Everardo Perez-Garcia, and Everardo Perez-Trujillo. Del Re facts ¶ 10. Deputy sheriff Cheryl Martin completed the remaining portions of Perez-Garcia's booking card. She copied some of the information from Trujillo's prior arrest records. Perez-Garcia facts ¶ 7.

---

[2]In accordance with Local Rule 56.1, Del Re submitted a statement of undisputed facts ("Del Re facts"). Perez-Garcia responded to Del Re's facts ("Perez-Garcia response") and submitted a statement of additional undisputed facts ("Perez-Garcia facts"). Del Re responded to Perez-Garcia's facts ("Del Re response").

[3]Perez-Garcia submitted an appendix ("Perez-Garcia App.") in support of his undisputed facts.

Perez-Garcia repeatedly told sheriff's deputies he was not Trujillo. Perez-Garcia facts ¶ 3. He showed them his *matricula* picture identity card issued by the Mexican consulate that identified him as Everardo Perez-Garcia. *Id.* at ¶ 5. Del Re disputes these facts, relying on the deposition testimony of Brett Klein and Cheryl Martin. Brett Klein testified on behalf of the Lake County sheriff's office pursuant to Fed.R.Civ.P. 30(b)(6). He testified he did not recall hearing any second-hand reports about Perez-Garcia's mistaken identity claim. Del Re Resp. ¶ 2. Martin, one of the officers who booked Perez-Garcia, testified she normally reviews a detainee's identification card in the booking process. *Id.* at ¶ 5. Neither Klein's nor Martin's deposition testimony refutes Perez-Garcia's testimony that he told the booking officers he was not Trujillo.

When Perez-Garcia was arrested and booked, Lake County jail had access to Trujillo's fingerprints, booking cards, and mug shots in both digital and paper format. *Id.* at ¶ 6 (a), (b), (c). Trujillo's booking cards listed his weight as 165 pounds. *Id.* at ¶ 6 (c). At the time of his arrest, Perez-Garcia weighed over 200 pounds. *Id.* Trujillo's most recent mug shot appeared on Martin's computer screen when she booked Perez-Garcia. *Id.* at ¶ 6 (a). Perez-Garcia's mug shot bears little, if any, resemblance to Trujillo's mug shot. *See* Perez-Garcia App. Ex. E.

Lake County jail policy requires booking officers to notify the United States Immigration and Naturalization Services ("INS") Law Enforcement Support Center ("LESC") whenever a detainee born outside the United States is charged with a felony or misdemeanor. Del Re facts ¶ 11. On November 9, 2003, Lake County jail notified LESC of Perez-Garcia's arrest. Del Re facts ¶¶ 13, 15. On November 10, 2003, INS issued an immigration detainer for "Averardo Perez-Garcia." *Id.* at ¶ 15, Perez-Garcia App. Ex. I. The detainer notice stated "[t]his is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification . . . or other

3

treatment. . . ." *Id.* INS initiated an investigation to determine whether Perez-Garcia was subject to removal from the United States, and requested that the Lake County sheriff's office notify INS in advance of his release. *Id.* The detainer notice stated that federal regulations (8 C.F.R. 287.7) require a criminal justice agency to maintain custody of an alien for a period not to exceed 48 hours to provide adequate time for INS to assume custody of the alien. *Id.*

On November 10, 2003, Perez-Garcia appeared in bond court. The judge ordered Everardo Perez-Trujillo held on $1,000 bond and continued the case to November 14, 2003. *Id.* at ¶ 16. Perez-Garcia never posted bond. *Id.* at ¶ 19. On November 14, 2003, Perez-Garcia again appeared in court; the judge continued the case until December 1, 2003. *Id.* at ¶ 20. On December 1, 2003, the Lake County Circuit Court ordered Perez-Garcia's release because he was the "wrong defendant in custody." *Id.* at ¶ 21-22. The order stated "jail should confirm INS holds. This def. is Everardo Garcia." *Id.*

The parties dispute when INS released Perez-Garcia's immigration detainer. Perez-Garcia claims INS verbally released the detainer on December 1, 2003. Del Re claims INS released the detainer when it faxed a written release on December 2, 2003. According to Deputy Sheriff Threadgill, INS sometimes verbally releases detainers over the telephone. Perez-Garcia facts at ¶ 16. Deputy Sheriff Melhorn wrote on Perez-Garcia's booking card "No INS hold per ofc. Robles."[4] *Id.* at ¶ 15. Deputy Sheriff Melhorn worked on December 1, 2003. He did not work on the following day. *Id.* at ¶ 14. INS released Perez-Garcia's immigration detainer in writing on December 2, 2003. Del Re facts ¶ 23. Perez-Garcia was released from Lake County jail on the afternoon of December 2, 2003. Perez-Garcia facts ¶ 16.

---

[4]Del Re objects to these facts as irrelevant, but he does not deny them.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Summary Judgment Motion

Del Re moves for summary judgment on Perez-Garcia's false imprisonment claim (Count II). To prove false imprisonment, Perez-Garcia must establish that Del Re caused or procured his restraint without reasonable grounds to believe that he committed an offense. *Randall v. Lemke*, 311 Ill. App. 3d 848, 851-2, 726 N.E.2d 183, 186 (2nd Dist. 2000). Del Re argues he cannot be liable for falsely detaining Perez-Garcia from November 9, 2003 through December 1, 2003, because he acted pursuant to state law and court orders to detain Perez-Garcia. Del Re argues he cannot be liable for falsely imprisoning Perez-Garcia after the court ordered his release on December 1, because he acted pursuant to federal regulations when he continued to detain Perez-Garcia through December 2.

## A. November 9, 2003 through December 1, 2003

Del Re argues he cannot be liable for false imprisonment based on Perez-Garcia's incarceration from November 9, 2003 through December 1, 2003, because he acted pursuant to the Illinois County Jail Act, 730 ILCS § 125/4, and the November 10 and 14 court orders. The Illinois County Jail Act requires Lake County jail to "receive and confine in such jail, until discharged by due course of law, all persons committed to such jail by any competent authority." *Id.* According to Del Re, he had a duty to receive and detain Perez-Garcia because Grayslake officer Balarin arrested him pursuant to a warrant and presented him to the Lake County jail for confinement.

Del Re cites *Sparling v. City of LaSalle*, 83 Ill. App. 3d 125, 403 N.E.2d 769 (3rd Dist. 1980), in support of his argument. In *Sparling*, plaintiff was arrested without a warrant by two undercover officers from the City of LaSalle. He was first taken to the Ladd Village jail and then to the Bureau County jail. *Id.* at 126. The county jail took custody of him after his arrest on a criminal complaint. *Id.* Plaintiff claimed county employees and agents knew he was innocent but refused to release him from the county jail. *Id.* The county moved for summary judgment on the ground that it had a statutory duty to confine him and no legal duty to release him. *Id.* The appellate court agreed, stating:

> [d]efendant took custody of plaintiff from a police officer for confinement pursuant to a criminal complaint. According to the law of Illinois, defendant was required to keep plaintiff confined in jail until released by court order. These circumstances do not amount to false imprisonment.

*Id.*

Similarly, in *Weinmann v. County of Kane*, 150 Ill. App. 3d 962, 502 N.E.2d 373 (2nd Dist. 1986), plaintiff was arrested by Sugar Grove police officers, but imprisoned in the Kane County jail.

6

He brought a false imprisonment claim against the county based on his detention at the county jail. *Id.* at 969, 376. Plaintiff claimed the sheriff's deputies knew he committed no crime, but failed to release him. *Id.* Relying on *Sparling*, and distinguishing cases that allowed false imprisonment claims against the arresting officers, the court concluded plaintiff could not base his false imprisonment claim on the sheriff's employees' refusal to release him because they acted as mere custodians. *Id.*

Perez-Garcia's response does not directly address either the Illinois County Jail Act or the *Sparling* line of cases. He impliedly seeks to distinguish the *Sparling* line of cases on the basis that the sheriff's deputies were not mere custodians; rather, he claims they actively participated in arresting him under a mistaken identity. Response at 3. He argues the sheriff's department created the misidentification by confirming Trujillo's outstanding arrest warrant, and requesting that the subject be transported to the Lake County jail. Perez-Garcia facts ¶ 2. He also argues Martin participated in his mistaken arrest as Trujuillo by using information from Trujillo's arrest records to complete his booking card. *Id.* at ¶ 7. The court must decide whether these facts create a genuine issue of material fact as to whether the sheriff played an instrumental role in Perez-Garcia's arrest.

The court is guided by *Smith v. Sheriff of Cook County*, 277 Ill. App. 3d 335, 660 N.E.2d 211 (1st Dist. 1995). In *Smith*, plaintiff was arrested by Carbondale police officers based on a warrant issued for another person. The Carbondale police officers took him into custody and incarcerated him at the Jackson County jail. *Id.* at 336. On the day of plaintiff's arrest, Carbondale police officers telexed a message to confirm the arrest warrant for a fugitive with plaintiff's name, Anthony Smith. *Id.* The message contained plaintiff's correct birthday and social security number. *Id.* The sheriff's office telexed a message back to the Carbondale police department confirming an

outstanding warrant for an Anthony Smith with a different birth date. *Id.* The message stated

"Please hold him for us. If he cannot post bond, advise when he will be available for pick up. At

that time, we will make arrangements to pick him up." *Id.* Plaintiff was later transferred from the

Jackson County jail to the Cook County jail. *Id.* One day after he was transferred, he was ordered

to be held on a $20,000 bond. *Id.* Approximately one month later, he was ordered to be released

from custody because he was not the man wanted in the warrant. *Id.* at 337.

Plaintiff sued the Cook County sheriff for false imprisonment, claiming he failed to

investigate and compare his photographs and fingerprints to those of the man identified in the

warrant. The sheriff moved to dismiss the complaint on the basis that he acted only as custodian and

followed all pertinent statutes. After discussing *Sparling*, the appellate court held plaintiff could

only survive the sheriff's motion to dismiss if an issue of fact existed as to whether the sheriff served

not only as plaintiff's custodian, but also played an instrumental role in plaintiff's arrest. *Id.* at 338,

660 N.E.2d at 214. Plaintiff argued the telex sent by the sheriff to the Carbondale police department

evidenced the sheriff's active role in his arrest. *Id.* at 338. The court rejected plaintiff's argument

because the telex message did not instruct the Carbondale police to hold the plaintiff whether or not

he was the person identified on the warrant. *Id.* at 339. Rather, the telex instructed the police to hold

the "above subject" and left it to the police to decide whether the person they were holding was in

fact the subject named in the warrant. *Id.* The court affirmed dismissal of the complaint because

the Carbondale police, not the Cook County sheriff, made the determination to hold plaintiff despite

the fact his birth date differed from that of the man named in the warrant. *Id.*

Perez-Garcia cannot maintain a false imprisonment claim against the Lake County sheriff

unless there is a genuine issue of fact as to whether the sheriff's office played an instrumental role

8

in Perez-Garcia's arrest. *See id.* at 338. Perez-Garcia relies on the November 9, 2003 telex message from the Lake County sheriff's department to the Grayslake police department as evidence that the sheriff's department was instrumental in his arrest. Perez-Garcia response ¶ 7. Perez-Garcia's reliance is misplaced because, as in *Smith*, the telex message merely confirmed an outstanding warrant for Perez, Everardo Truvillo, and requested the police transport the "subject" to Lake County jail if he was unable to post bond. Perez-Garcia App. Ex. B. The telex message did not represent that the person held by Officer Balarin was Trujillo. That determination was left to Officer Balarin. Perez-Garica's booking sheet is clear that the Grayslake police department, not the Lake County sheriff's department, arrested him pursuant to a warrant. Perez-Garcia App. Ex. H. In short, the telex message does not create an issue of fact as to whether the Lake County sheriff was instrumental in deciding to arrest Perez-Garcia pursuant to Trujillo's warrant.

Moreover, the fact that Martin used some information from Trujillo's arrest records to complete Perez-Garcia's booking card does not create an issue of fact as to whether the sheriff was instrumental in Perez-Garcia's arrest. By the time Martin completed the booking card, Perez-Garcia had already been arrested on Trujillo's warrant. *See O-Neill v. City of Chicago*, 2002 U.S. Dist. LEXIS 18097, at *28 (N.D. Ill. Sept. 24, 2002) (a person is arrested whenever an officer restrains the freedom of a person to walk away; filling out the complaint forms and signing the arrest reports took place after plaintiffs' arrests). When Martin completed the booking card, Balarin had already filled out a portion of the card identifying Perez-Garcia as Averardo Perez and indicated that he was arrested pursuant to a warrant. Perez-Garcia response ¶ 9. The undisputed facts establish that Balarin, not the sheriff, decided to arrest Perez-Garcia under Trujillo's warrant.

9

Perez-Garcia cites numerous cases in his response memorandum. Because his response inappropriately addresses Count I, a 42 U.S.C. § 1983 claim, several of the cited cases relate to constitutional-tort claims decided under federal law. *See Newsome v. McCabe* , 319 F.3d 301 (7th Cir. 2003); *Johnson v. City of Chicago*, 711 F. Supp. 1465 (N.D. Ill. 1989). These cases are inapposite because they did not consider false imprisonment claims under Illinois law. Moreover, the cases are distinguishable on their facts. *See Jones v. City of Chicago*, 856 F.2d 985, 993-4 (7th Cir. 1988) (multiple tort claims were brought against investigating officers, arresting officers and prosecutors for withholding exculpatory evidence and testifying falsely; no claims were brought against jailors); *Newsome*, 319 F.3d at 302 (§ 1983 claim brought against arresting officers who withheld key evidence and induced witnesses to testify falsely; no claims were brought against jailors); *Johnson,* 711 F. Supp. at 1474 *(*§ 1983 claim brought against city and sheriff; court dismissed claim against sheriff with prejudice because he followed a valid court order when he detained plaintiff).

*Hernandez v. City of Chicago*, 2001 U.S. Dist. LEXIS 1217 (N.D. Ill. Feb. 8, 2001), is the only cited authority that involved a claim for false imprisonment against the sheriff's office. Hernandez was detained for 15 days under a mistaken identity. He sued the Cook County sheriff for numerous violations, including § 1983 and false imprisonment claims. The sheriff moved to dismiss all claims. The court denied the motion to dismiss the false imprisonment claim because the complaint alleged the necessary elements to state a claim. *Id.* at *25-26. The court did not address either the Illinois County Jail Act, or the *Sparling* line of cases. The court finds the *Hernandez* case unconvincing because it did not address the issue raised in Del Re's motion.

In sum, the undisputed evidence shows that Del Re acted in accordance with Illinois law and the November 10 and 14 court orders when he detained Perez-Garcia from November 9, 2003 through December 1, 2003. Summary judgment must therefore be granted for Del Re on Count II based on Perez-Garcia's detention from November 9, 2003 through December 1, 2003, when the court ordered his release from custody.

## B. December 1 to December 2, 2003

Del Re argues that he was required to hold Perez-Garcia in custody after the state court ordered his release on the afternoon of December 1 because there was still an INS detainer lodged against him. Indeed, the state court judge stated in his December 1 release order that the jail "should confirm any INS holds." Del Re Ex. C. Federal regulations require a local law enforcement agency to maintain custody over an alien who is subject to an INS detainer for a period not exceeding 48 hours. 8 CFR § 287.7(d) [a criminal justice agency *shall* maintain custody of a "not otherwise detained" alien for up to 48 hours in order for INS to assume custody] [emphasis added]. It is undisputed that on November 10, 2003, INS issued a detainer in Perez-Garcia's name, although his first name was misspelled "Averardo" instead of "Everardo." Del Re Ex. F, Affidavit of Brian Threadgill, Ex. 4; Perez-Garcia response ¶ 15. INS sent the Lake County Jail a notice by facsimile cancelling the detainer on December 2, 2003. Del Re Ex. D, Affidavit of Brett Klein, Ex. 4. It is undisputed that Perez-Garcia was released at 2:00 p.m. the same day INS faxed the release of its detainer. Perez-Garcia facts ¶ 16. According to Del Re, holding Perez-Garcia for one day pursuant to an INS detainer cannot constitute unlawful custody nor subject him to liability under 28 U.S.C. § 1983.

11

Perez-Garcia takes the position that INS actually released the detainer on December 1st during a telephone conversation between INS Officer Robles and Deputy Sheriff Mehlhorn, and that this fact was noted on his booking card. There is evidentiary support for his contention. Perez-Garcia response ¶ 23; Perez-Garcia facts ¶¶ 14-16; Perez-Garcia Ex. Deposition of Brian Threadgill at 17, 107. He argues he was unlawfully held in custody an extra day while the sheriff's office awaited "paperwork" from INS. Perez-Garcia facts ¶ 16; Perez-Garcia brief at 5.

Viewing the facts in a light most favorable to Perez-Garcia, there is a disputed factual issue whether the INS detainer was cancelled on December 1 or December 2. Neither party provides legal analysis or authority to resolve the related issue whether liability under § 1983 would attach when a law enforcement agency holds an alien for less than 48 hours to await written conformation of the release of an INS detainer. Presumably, this situation is not an uncommon occurrence. It is not a foregone conclusion that the disputed issue regarding the date of the detainer's cancellation is *material.* Nonetheless, Del Re has the burden of establishing that, as a matter of law, the release date is immaterial under the circumstances. This burden has not been satisfied. Summary judgment on this narrow issue must therefore be denied.

## CONCLUSION

Del Re's summary judgment motion is granted on Count II with respect to Perez-Garcia's incarceration from November 9, 2003 to the afternoon of December 1, 2003, when the Lake

County Circuit Court ordered his release. The motion is denied as to his incarceration following

the court release order until 2:00 p.m. on December 2, 2003, when he was actually released.

April 13, 2005                                        ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge